IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM ROUSER,

        Plaintiff,                    No. CIV S-93-0767 LKK GGH P

    vs.

THEO WHITE, et al.,

        Defendants.                   O R D E R

_____/

    Plaintiff William Rouser has brought suit against the
defendants, all of whom are employees of the California
Department of Corrections and Rehabilitation ("CDCR"), alleging
they violated his civil rights by denying him his right to
practice his religion while incarcerated.  Plaintiff's Second
Amended Complaint raises claims for violations of: 1) the
Religious Land Use and Institutionalized Persons Act ("RLUIPA"),
42 U.S.C. § 2000 et seq.; 2) the Free Exercise and Establishment
Clauses of the First Amendment of the U.S. Constitution; 3) the
Equal Protection Clause of the Fourteenth Amendment of the U.S.
Constitution; 4) the Free Exercise and Establishment Clauses of

1

1  the California Constitution (Art. I, sec. 4); and 5) the Equal

2  Protection Clause of the California Constitution (Art. I, sec.

3  7).

4      Pending before the court is defendants' motion to dismiss

5  plaintiff's federal and California state Establishment Clause

6  claims (counts 3 and 6, respectively ).  For the reasons

7  explained below, the motion is denied.

8                    **I.  FACTUAL ALLEGATIONS**[1]

9      Plaintiff is an adherent of the Wiccan religious faith who

10  seeks to practice his religion while incarcerated.  SAC ¶¶ 15.

11  The complaint alleges that the use of various religious articles

12  and the ability to conduct group worship under the guidance of a

13  spiritual leader are central to the practice of plaintiff's

14  religious beliefs.  SAC ¶¶ 16-17.  According to the complaint,

15  the plaintiff, as a prisoner of the state, has been harassed and

16  discriminated against due to his adherence to Wicca.  SAC ¶¶ 19-

17  20.  Defendants' alleged discrimination has taken many forms,

18  including denying plaintiff access to his religious articles

19  (such as altars, wands, incense, tarot cards, and the Wiccan

20  Bible) and denying plaintiff the ability to conduct group worship

21  under the guidance of a spiritual leader, while allowing such

22  access to other prisoners who adhere to one of the five religions

23

24

25  _____

26      [1] Allegations are taken from plaintiff's Second Amended
    Complaint filed on June 27, 2008, unless otherwise noted.

                              2

1  outlined in CDCR's Departmental Operations Manual ("DOM").[2]  SAC

2  ¶¶ 18, 19, 24, 25, 27, 30, 32, 33, 56-59.  In part, CDCR's DOM

3  identifies that the prisons may obtain qualified chaplains from

4  five religious categories: Muslim, Jewish, Catholic, Protestant,

5  and "Native American."  See DOM § 101060.5. Plaintiff challenges

6  the alleged institutional preference toward these denominations

7  on the grounds that the preference goes beyond the employment of

8  chaplains and influences other decisions regarding religion.

9       The plaintiff's complaint was initially filed in 1993.  The

10  parties settled in November, 1997.  The terms of the settlement

11  provided, in part, that plaintiff would have access to the Wiccan

12  Bible and other religious materials, even while housed in a

13  Security Housing Unit or Administrative Segregation, consistent

14

15       [2] Defendants request the court take judicial notice of
    CDCR's Departmental Operations Manuals ("DOM") sections 101060.1,
16  101060.2, 101060.4.  This manual describes the policies regarding
    CDCR's efforts to facilitate inmates religious and spiritual
17  welfare.  Defendants have provided a copy of the manual to the
    Court as Exhibit A in support of defendant's Motion to Dismiss
18  Count 3 of the Second Amended Complaint.
         A court may take judicial notice of a fact not subject to
19  reasonable dispute, either because the fact is generally known
    within the territorial jurisdiction of the trial court or because
20  the fact is capable of accurate and ready determination from
    sources whose accuracy cannot reasonably questioned.  Fed. R.
21  Evid. 201(b).  A court shall take judicial notice of a judicially
    noticeable fact "if requested by a party and supplied with the
22  necessary information."  Fed. R. Evid. 210(d).
         Here, the DOM is a public document, and therefore the court
23  is able to accurately and readily determine its contents.
    Defendants have complied with Federal Rule of Evidence 201(d) by
24  requesting judicial notice and supplying the court with a copy of
    the applicable sections of the DOM.
25       Therefore, the court takes judicial notice of CDCR's DOM
    sections 101060.1, 101060.2, and 101060.4.
26

1  with policies and procedures regulating inmate access to

2  religious articles.  SAC ¶¶ 29(a)-(d).  Additionally, the

3  settlement agreed to permit a volunteer Wiccan spiritual advisor

4  to conduct Wiccan services.  SAC ¶ 29(g).  In 2003, plaintiff

5  notified the court that defendants were not honoring the terms of

6  the settlement.

7      The case was reopened, although plaintiff's prior counsel

8  withdrew from representation.  In 2006, plaintiff's substituted

9  counsel also withdrew.  Proceeding *pro se*, plaintiff filed an

10  amended complaint on January 30, 2006, which supplemented his

11  February 12, 1997 complaint.  Plaintiff, with the assistance of

12  counsel, filed a second amended complaint on June 30, 2008.

13      Pending before the court is defendants Tilton and Yates'

14  motion to dismiss the Establishment Clause violations embodied in

15  count three (brought under the U.S. Constitution) and six (under

16  the California Constitution) of the Second Amended Complaint.

17                        **II.  STANDARDS**

18  **A.   Standard for Dismissal Pursuant to Federal Rule of Civil**

19  **      Procedure 12(b)(1)**

20      Federal Rule of Civil Procedure 12(b)(1) allows a party to

21  raise, by motion, a defense that the court lacks "jurisdiction

22  over the subject matter" of a claim. Fed. R. Civ. P. 12(b)(1).

23  As "the federal courts are courts of limited jurisdiction," the

24  party seeking to invoke the court's jurisdiction bears the burden

25  of establishing its existence.  Kokkonen v. Guardian Life Ins. Co

26  of Am., 511 U.S. 375, 377 (1994) (citations omitted); Stock West,

                                   4

1  <u>Inc. v. Confederated Tribes</u>, 873 F.2d 1221, 1225 (9th Cir. 1989).

2  A Rule 12(b)(1) motion to dismiss for lack of jurisdiction
3  may be either facial, where the inquiry is confined to the
4  allegations in the complaint, or factual, where the court is
5  permitted to look beyond the complaint to extrinsic evidence.
6  <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004); <u>Savage v.</u>
7  <u>Glendale Union High School Dist. No. 205</u>, 343 F.3d 1036, 1040 n.2
8  (9th Cir. 2003).  Where the attack is facial, as in this case,
9  the court takes the allegations in the complaint as true.
10  <u>Bollard v. Cal. Province of the Soc'y of Jesus</u>, 196 F.3d 940,
11  944-945 (9th Cir. 1999).  In contrast, when the motion
12  constitutes a factual attack, "no presumptive truthfulness
13  attaches to plaintiff's allegations, and the existence of
14  disputed material facts will not preclude the trial court from
15  evaluating for itself the merits of jurisdictional claims."
16  <u>Thornhill Publ'g Co. v. Gen. tel. & Elec. Corp.</u>, 594 F.2d 730,
17  733 (9th Cir. 1979); <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>,
18  549 F.2d 884, 891 (3d Cir. 1977).

19  **B.   Standard for Dismissal Pursuant to Federal Rule of Civil**
20  **Procedure 12(b)(6)**

21  In order to survive a motion to dismiss for failure to state
22  a claim, plaintiffs must allege "enough facts to state a claim to
23  relief that is plausible on its face."  <u>Bell Atlantic Corp. v.</u>
24  <u>Twombly</u>, __ U.S. __, 127 S. Ct. 1955, 1974 (2007).  While a
25  complaint need not plead "detailed factual allegations," the
26  factual allegations it does include "must be enough to raise a

1  right to relief above the speculative level." <u>Id.</u> at 1964-65.

2      The Supreme Court recently held that Federal Rule of Civil

3  Procedure 8(a)(2) requires a "showing" that the plaintiff is

4  entitled to relief, "rather than a blanket assertion" of

5  entitlement to relief.  <u>Id.</u> at 1965 n.3.  Though such assertions

6  may provide a defendant with the requisite "fair notice" of the

7  nature of a plaintiff's claim, the Court opined that only factual

8  allegations can clarify the "grounds" on which that claim rests.

9  <u>Id.</u>  "The pleading must contain something more. . . than . . . a

10 statement of facts that merely creates a suspicion [of] a legally

11 cognizable right of action." <u>Id.</u> at 1965, quoting 5 C. Wright &

12 A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d

13 ed. 2004).[3]

14     On a motion to dismiss, the allegations of the complaint

15 must be accepted as true.  <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319, 322

16 (1972).  The court is bound to give the plaintiff the benefit of

17 every reasonable inference to be drawn from the "well-pleaded"

18 allegations of the complaint.  <u>See</u> <u>Retail Clerks Int'l Ass'n v.</u>

19 <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  In general, the

20 complaint is construed favorably to the pleader.  <u>See</u> <u>Scheuer v.</u>

21 <u>Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by</u>

22 <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982).  Nevertheless, the

23

24     [3] The holding in <u>Twombly</u> explicitly abrogates the well
   established holding in <u>Conley v. Gibson</u> that, "a complaint should
   not be dismissed for failure to state a claim unless it appears
25 beyond doubt that the plaintiff can prove no set of facts in
   support of his claim which would entitle him to relief."  355
26 U.S. 41, 45-46 (1957); <u>Twombly</u>, 127 S. Ct. at 1968.

1  court does not accept as true unreasonable inferences or

2  conclusory legal allegations cast in the form of factual

3  allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th

4  Cir. 1981).

5                          **III. ANALYSIS**

6       In his complaint, the plaintiff alleges that the defendants

7  violated the Establishment Clauses of the United States and

8  California Constitutions by discriminating against the Wiccan

9  religion and creating denominational preferences towards other

10 religions.  Defendants have moved to dismiss the plaintiff's

11 third and sixth claims on the grounds that the plaintiff lacks

12 standing and that the doctrine of religious neutrality is

13 inapplicable in the prison context.  As explained below, the

14 court does not agree.

15 **A.    Standing**

16      Defendants first move to dismiss plaintiff's Establishment

17 Clause claims on the basis that the court lacks subject matter

18 jurisdiction, because the plaintiff has not alleged the elements

19 of standing. Specifically, defendants contend that plaintiff has

20 failed to allege a personal injury fairly traceable to the

21 actions of the defendants.

22      **1.    Article III Standing**

23      Drawing every inference in favor of the plaintiff, it

24 appears the complaint alleges that the defendants violated his

25 rights under the Establishment Clause of the First Amendment.

26 Plaintiff alleges that defendants' actions exhibited a

                                 7

1  "preference" toward the religions outlined in the DOM, which may

2  be read to allege that the defendants' discriminated against the

3  plaintiff's Wiccan religion. <u>See</u> SAC ¶¶ 18, 19, 24, 25, 27, 30,

4  32, 33-35, 38, 56-59.

5      Defendants' motion to dismiss centers on the contention that

6  CDCR may employ chaplains without violating the Establishment

7  Clause.  This appears to overlook the crux of the plaintiff's

8  Establishment Clause claims, which seek to challenge CDCR's

9  institutional preferences with regard to religion as

10 discriminatory and violative of the Establishment Clause.  It is

11 plaintiff's injury with regards to these allegations that is

12 relevant in considering his standing.

13     To establish standing, the plaintiff must show "(1)that he

14 has suffered an "injury in fact" that is (a) concrete and

15 particularized and (b) actual or imminent, not conjectural or

16 hypothetical; (2) that the injury is fairly traceable to the

17 challenged action of the defendant; and (3) it is likely, as

18 opposed to merely speculative, that the injury will be redressed

19 by a favorable decision." <u>Friends of Earth, Inc. V. Laidlaw</u>

20 <u>Environmental Services</u>, 528 U.S. 167, 180-181 (2000); <u>citing</u>

21 <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992).

22     However, standing to challenge a state action under the

23 Establishment Clause, unlike the Free Exercise Clause, does not

24 require proof that particular religious freedoms were infringed.

25 <u>School District of Abington Township v. Schempp</u>, 374 U.S. 203,

26 224 n.9 (1963).  Rather, a plaintiff has standing upon the

allegation that they have been "directly affected by the laws and practices against which their complaints are directed," id., and when they have a spiritual stake in the First Amendment values sufficient to raise issues concerning the Establishment Clause. Association of Data Processing Serv. Orgs, Inc. V. Camp, 397 U.S. 150, 154 (1970).

The concept of a "concrete" injury is particularly elusive in the Establishment context. Vasquez v. Los Angeles County, 487 F.3d 1246, 1250 (9th Cir. 2007). This is because an Establishment Clause plaintiff does not generally suffer any physical injury or pecuniary loss. Id.; see also Suhre v. Haywood County, 131 F.3d 1083, 1086 (4th Cir. 1997) (the court reasoned that the injury is the effect that the alleged establishment of religion has on a plaintiffs "spiritual, value laden beliefs"). Thus, while intangible injuries suffice to make an Establishment Clause claim justiciable, a plaintiff must allege such an injury which he has personally suffered as a consequence of the alleged constitutional violation. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 486 (1982).[4]

In his Second Amended Complaint, plaintiff alleges a direct

_____

[4] Contrary to defendants' assertion, the court in Vasquez explained that "a standing rule requiring plaintiffs to show affirmative avoidance would impose too onerous a burden upon those seeking to challenge governmental action under the Establishment Clause." 487 F.3d at 1252. Thus, the Ninth Circuit has not adopted a rule that requires the plaintiff to show that the state action at issue has caused him to alter his behavior.

1  injury, in that defendants "have violated the prohibition on

2  governmental acts or undertakings respecting an establishment or

3  religion by favoring particular religious denominations over

4  plaintiff's, as well as disfavoring plaintiff's religion," by

5  denying plaintiff access to his religious articles, group

6  worship, and spiritual leadership, while affording inmates of

7  other faiths access to their religious articles and spiritual

8  leaders.  SAC ¶¶ 56-58.  Hence, plaintiff as a follower of Wicca

9  alleges sufficiently that defendants have favored the five

10 religions outlined in the CDCR DOM, while repeatedly denying

11 plaintiff the ability to practice his religion.

12      Further, plaintiff's second amended complaint alleges that

13 "as a direct and proximate result of defendants' ongoing wrongful

14 conduct, as herein alleged, plaintiff suffered, and continues to

15 suffer, severe emotional distress, humiliation. . .among other

16 injuries."  SAC ¶ 59.  Thus, plaintiff sufficiently alleges that

17 his injury, the suppression of his religion and the preference

18 toward the five religions in the CDCR's DOM, is fairly traceable

19 to the actions of the defendant.  Lastly, it is uncontested that

20 plaintiff's injury, the suppression of his religion and the

21 state's endorsement of five other religions, would be redressed

22 by a favorable decision by this court within the meaning of Allen

23 v. Wright, 468 U.S. 737, 751 (1984).

24      In sum, plaintiff alleges that he is a follower of Wicca and

25 that his religion is being discriminated against and suppressed

26 while other religions outlined in CDCR's DOM have been

1  accommodated.  This suffices to state a claim to relief that is

2  plausible on its face, as well as provide defendants adequate

3  notice of the nature of the claim.  See Twombly, 127 S. Ct. at

4  1974.  Accordingly, plaintiffs' allegations suffice to show that

5  he has standing to bring his Establishment Clause claims.

6      **2.  Prudential Concerns**

7      Defendants also call to the court's attention that a similar

8  case is proceeding in the Northern District of California,

9  McCollum v. CDCR, No. C04-3339 CRB, and request a stay of the

10 instant case.  The power to stay proceedings in the interest of

11 judicial economy is an inherent power left to the discretion of

12 the court.  Landis v. North Am. Co., 299 U.S. 248, 254 (1936).

13 The party requesting the stay "must make out a clear case of

14 hardship or inequity in being required to go forward, if there is

15 even a fair possibility that the stay for which he prays will

16 work damage to some one else."  Id. at 255.  "Only in rare

17 circumstances will a litigant in one cause be compelled to stand

18 aside while a litigant in another settles the rule of law that

19 will define the rights of both."  Id.

20     In the present case, defendants have not offered any reason

21 why the resolution of this case will present a hardship or

22 inequity.  Additionally, it is plausible that a stay would work

23 damage on the plaintiff who would be required to stand aside

24 until the resolution of McCollum v. CDCR.  Given the limited

25 information regarding the Northern District litigation, it is

26 difficult for this court to make any determinations regarding the

1  best interests of the parties or the court.[5]  Hence, the court

2  declines to stay the case pending the resolution of <u>McCollum</u>.

3  **B.   Establishment Clause**

4       In their motion, defendants contend that plaintiff's

5  Establishment Clause claims fail as a matter of law, because

6  federal law permits corrections facilities to take affirmative

7  acts to accommodate the religious practice of inmates.

8       As a preliminary matter, both parties agree that resolution

9  of the federal Establishment Clause claim necessarily disposes of

10 the state claim as well.  Article 1, section 4 of the California

11 Constitution "coincides with the intent and purpose of the First

12 Amendment establishment clause" and the claims are therefore

13 analyzed under the same standard.  <u>East Bay Asian Local</u>

14 <u>Development Corp. v. State of California</u>, 24 Cal.4th 693, 718

15 (2000).

16      The First Amendment of the United States Constitution

17 proscribes, in part, any law "respecting an establishment of

18 religion."  In its evaluation of the contours of the

19 Establishment Clause, the Supreme Court has repeatedly determined

20 that prison inmates retain the protections afforded them by the

21 First Amendment.  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348

22 (1987), <u>superseded on other grounds by statute</u>, Religious Land

23 Use and Institutionalized Persons Act, 42 U.S.C. § 2000 et seq.,

24 <u>as recognized in</u> <u>Hart v. CSP-Solano</u>, 2005 U.S. Dist. LEXIS 20057

25

26      [5] The defendants have not asked the court to take judicial
    notice of any orders that have been issued in <u>McCollum v. CDCR</u>.

1  (2005).  As the Supreme Court emphasized,

2      [T]hough his rights may be diminished by the needs and
       exigencies of the institutional environment, a prisoner
3      is not wholly stripped of constitutional protections
       when he is imprisoned for crime. There is no iron
4      curtain drawn between the Constitution and the prisons
       of this country.
5  Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974).  Among these

6  constitutional protections is the prisoner's "substantial

7  religious freedom." Id.  This right delineates the intrinsic

8  limit of the state's authority over its inmates; put plainly,

9  "prison officials are not now such masters of their own domain as

10 to be free of the restraints of constitutional reasonability."

11 Gilmore v. Lynch, 319 F. Supp. 105, 108 (N.D. Cal. 1970), aff'd

12 by Younger v. Gilmore, 404 U.S. 15 (1971).

13     "The clearest command of the Establishment Clause is that

14 one religious denomination cannot be officially preferred over

15 another."  Larson v. Valente, 456 U.S. 228, 244 (1982).  When the

16 state action facially shows a preference for one religion over

17 others, it must be analyzed under strict scrutiny.[6]  Id.; see

18 also Hernandez v. Commissioner, 490 U.S. 680, 695 (1989).

19 In Larson, the Court held that a Minnesota law that exempted

20 religious institutions that received half of their financial

21 support from member's contributions was unconstitutional, because

22

23     [6] Contrary to both parties' assertions, the classic three-
    prong test derived from Lemon v. Kurtzman, 403 U.S. 602 (1971),
24  is only applicable when government actions or laws are facially
    neutral and make no denominational preference among religions.
25  See Hernandez v. Commissioner, 490 U.S. 680, 695 (1989).  That is
    not the case alleged by plaintiff.
26

1   it imposed denominational preferences on larger churches.  456

2   U.S. 228 (1982).  Similarly, in Board of Education of Kiryas Joel

3   Village School District v. Grumet, 512 U.S. 687 (1994), a New

4   York state law that created a separate school district for a

5   Hasidic Jewish community was held to be an unconstitutional

6   preference for one religion over others.

7       Defendants argue that the principle of neutrality is not

8   applicable in the prison context because the very accommodation

9   of religion over non-religion precludes neutrality.  While the

10  argument raises interesting and difficult questions, this court

11  need not resolve them.  Put directly, the court is aware of no

12  binding authority that would preclude the application of the

13  neutrality principle, articulated in Larson, in the prison

14  context.  While the court acknowledges the unique considerations

15  inherent in the operation of the penal system, when the state

16  provides religious accommodations to people, prisoners or not, it

17  appears to the court that it must do so in a manner that is

18  neutral.  Kiryas Joel, 512 U.S. at 705-707 ("whatever the

19  limitations of permissible legislative accommodation may be, it

20  is clear that neutrality as among religions must be honored").

21      The application of the neutrality principle in the prison

22  setting appears to comport with the Supreme Court's

23  interpretation of RLUIPA.  In Cutter v. Wilkinson, 544 U.S. 709,

24  723-24 (2005), the Court held that RLUIPA itself did not violate

25  the Establishment Clause, in part because it "does not

26  differentiate among bona fide faiths," relying on Kiryas Joel.

14

1  The Court further explained that in "properly applying RLUIPA, .

2  . . [courts] must be satisfied that the Act's prescriptions are

3  and will be administered neutrally among different faiths. . . ."

4  Id. at 720 (citing Kiryas Joel, 512 U.S. at 687).  Thus, because

5  RLUIPA's constitutionality depends on its neutral application,

6  the defendants' position that the neutrality principle is

7  unworkable in the corrections context appears particularly

8  disingenuous.

9       Defendants cite to a line of cases which indicate that the

10  paid employment of prison chaplains does not violate the

11  Establishment Clause of the First Amendment of the United States.

12  See Cutter, 544 U.S. at 725-26; School District of Abington

13  Township v. Schempp,374 U.S. 203 (1963); Duffy v. California

14  State Personnel Board, 232 Cal. App.3d 1 (1991).  These cases,

15  however, do nothing to call into question the use of Larson,

16  Kiryas Joel, or their progeny, in the prison context.  Rather,

17  the cited cases stand for the proposition that the burdens on the

18  fundamental and constitutionally recognized right of prisoners to

19  exercise their religious beliefs may be offset by providing

20  chaplains, without violating the Establishment Clause.  These

21  cases do not abrogate the Larson rule that all governmental

22  agencies must practice neutrality in the manner in which they

23  accommodate religions.

24       In the present case, plaintiff alleges that defendants "have

25  set the five state-sanctioned religions above Wicca, and have

26  withheld or granted rights based on wither an inmate belongs to

15

1  one of the approved religions." Plaintiff's Opposition to

2  Defendants' Motion to Dismiss at 4; see also SAC ¶¶ 56-58.

3  Further, CDCR's Departmental Operations Manual ("DOM") provides

4  that "[t]o facilitate inmate religious practices, wardens may

5  obtain qualified persons from these categories (1) Muslim,

6  Jewish, Catholic, Protestant chaplains and Native American

7  Spiritual Leader on a full-time, part-time, or intermittent

8  basis; (2) volunteer non-paid community clergy and/or religious

9  or spiritual leader representatives; and (3) inmates."

10 Defendants' Motion to Dismiss at 3.

11      On its face, the CDCR's DOM establishes denominational

12 preferences toward the five categories of religion outlined

13 therein and is analogous to the preferential treatment in Larson

14 and Kiryas Joel, both of which were held unconstitutional.  Thus,

15 accepting plaintiff's allegations as true, Mr. Rouser has raised

16 plausible grounds upon which he may be entitled to relief.

17 Accordingly, the court denies the motion to dismiss plaintiff's

18 Complaint for failure to state an Establishment Clause claim.

19                          **IV. CONCLUSION**

20      The motion to dismiss is denied.

21      IT IS SO ORDERED.

22      DATED: September 15, 2008.

23

24                        _____
                          LAWRENCE K. KARLTON
25                        SENIOR JUDGE
                          UNITED STATES DISTRICT COURT
26